STATE of Minnesota, Respondent,

v.

John Frederick KIER, Appellant.

No. A03–643.

Court of Appeals of Minnesota.

April 27, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Gregory A. Widseth, Polk County Attorney, Crookston, MN, for respondent.

John M. Stuart, State Public Defender, Michael F. Cromett, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; SCHUMACHER, Judge; and WRIGHT, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant John Fredrick Kier was convicted of first-degree refusal to submit to testing under Minn.Stat. §§ 169A.20, subd. 2, and 169A.24 (2002), possession of open bottle under Minn.Stat. § 169A.35, subd. 2 (2002), transportation of firearms under Minn.Stat. §§ 97B.045 (2002), and driving after cancellation under Minn.Stat. § 171.24, subd. 5 (2002). He challenges his convictions arguing the police did not have probable cause to believe he was driving under the influence of alcohol. Kier also challenges his 66–month commitment to the commissioner of corrections for first-degree refusal to submit to testing conviction and his consecutive 12–month commitment to the commissioner of corrections for his driving after cancellation conviction. He argues the sentencing court erred when executing both sentences without considering its alternatives and the court did not have the authority to commit him to the commissioner of corrections for the 12–month sentence. We affirm.

## FACTS

This is an appeal from a trial in district court pursuant to the procedures outlined in *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980). The only evidence presented at trial was the arresting officer's report, Kier's driving record, the implied consent advisory, and a videotape that was recorded by the in-dash video camera in the arresting officer's vehicle. The facts of this case are derived from the statements contained in the officer's report and the videotape recording of the stop.

In August 2002, at about Midnight, Deputy Phillip Juve observed Kier's van make a U-turn from a parked position and drive away without Kier turning on the van's headlights. Juve stopped the van because Kier's failure to illuminate his headlights was in violation of Minnesota law.

Shortly after the stop, the following conversation took place between Juve and Kier:

Juve: Hello there. Do you know why I stopped you, sir.

Kier: Inaudible.

Juve: Do you know why I stopped you? [No response] Do you know why I stopped you?

Kier: Because I made a U-turn.

Juve: That, and you also didn't have your headlights on.

Kier: Yeah, I know it. I just realized it.

When Juve asked Kier to sit down in the driver's seat of his vehicle, Kier responded, "I got to take a piss," and he proceeded to walk to the front of the vehicle where he disappeared from the camera's view for a short time.

Juve stated during this initial conversation he "observed a strong odor of an alcoholic beverage coming from the driver's breath, he had blood-shot watery eyes and slurred speech." Juve also noticed an open can of beer on a cooler next to the driver's seat and asked Kier to hand him the can.

Once Kier was back in the driver's seat of his vehicle, Juve asked Kier for his full name. Kier initially told Juve his name was Frederick James Kier. Kier later admitted his name was John Frederick Kier.

Juve ran a check on Kier's driver's license. He was informed that Kier's license was cancelled as inimical to public safety. The presentence investigation report shows Kier in fact had been convicted of driving-under-the-influence-of-alcohol-

related charges 23 times in the past, and since his arrest in this matter, he has been charged with driving under the influence of alcohol in Carlton County.

Juve returned to Kier's vehicle and asked him to step to the back of the vehicle. Juve asked Kier to perform routine field tests for alcohol impairment. Kier was unable to follow Juve's pen without moving his head, and when he recited the alphabet his speech was undecipherable at times. Juve also asked Kier to count backwards from 87 to 63. Before completing the test, Kier said: "This doesn't make no sense to me." At that point, Juve arrested Kier for driving under the influence.

While Kier was in custody, Juve asked him to submit to a preliminary breath test. Kier refused to take the test. At the police station, Juve read Kier the Minnesota implied consent advisory. Kier said he wanted to call his wife and have her contact an attorney. He was allowed to call his wife but never asked her to get an attorney. After Kier finished speaking to his wife, Juve requested Kier submit to a breath test. Kier refused.

The state charged Kier with first-degree driving while impaired, first-degree refusal to submit to testing, possession of open bottle, transportation of firearms, and driving after cancellation. The state dismissed the charge of driving while impaired. Kier moved to have the complaint dismissed for lack of probable cause or, in the alternative, to exclude all statements Kier made following his arrest. After an omnibus hearing, the court denied both motions. The trial court found Kier guilty of all remaining charges.

At the sentencing hearing, the court sentenced Kier to an executed sentence of 66 months for the first-degree failure-to-submit-to-testing conviction, an executed consecutive sentence of 12 months for the driving-after-cancellation conviction, and concurrent sentences of 90 days on his other two convictions. At the hearing, Kier argued that it was not appropriate to impose an additional sentence on top of this 66-month sentence, and, if the mandatory language applied, the district court should impose zero extra time.

## ISSUES

1. Did the sentencing court err when it required the 12-month sentence for a gross misdemeanor to be served in prison when that sentence is served consecutive to a felony offense?

2. Did the sentencing court err when it did not exercise its discretion to stay the 66-month sentence or the consecutive 12-month sentence?

3. Did Juve have probable cause to believe Kier was driving under the influence of alcohol when he arrested Kier?

## ANALYSIS

■■■ 1. Kier argues that the sentencing court lacked authority to commit him to the custody of the commissioner of corrections for a 12-month sentence. We review a sentence imposed by a district court under an abuse of discretion standard. *State v. Myers*, 627 N.W.2d 58, 61–62 (Minn.2001).

Kier neither raised this issue during the sentencing hearing nor requested a postconviction hearing. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn.1996) (normally defendant's "failure to raise the issue before the district court at trial precludes its litigation on appeal"). Because the issue of first impression regarding a matter of statutory construction is well briefed by both parties and is not dependent on any new or controverted facts, we will address this issue. *See Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687–88 (Minn.1997)

(stating factors appellate court should consider in choosing to address issue not raised below).

Minnesota law provides: "A sentence to imprisonment for a period of one year or any lesser period shall be to a workhouse, work farm, county jail, or *other place authorized by law.*" Minn.Stat. § 609.105, subd. 3 (2002) (emphasis added). Kier's 12–month sentence also is covered by the mandatory consecutive sentence provision of section 169A.28, which provides:

> The court shall impose consecutive sentences when it sentences a person for:
>
> . . . .
>
> (3) a violation of section 169A.20 and another offense arising out of a single course of conduct that is listed in subdivision 2, paragraph (e), when the person has five or more qualified prior impaired driving incidents within the past ten years.

Minn.Stat. § 169A.28, subd. 1 (2002). Subdivision 2, paragraph (e) states: "This subdivision applies to misdemeanor and gross misdemeanor violations of [section 171.24] if the offender has two or more prior impaired driving convictions within the past ten years...." Minn.Stat. § 169A.28, subd. 2(e) (2002).

Because Kier's sentence for driving after cancellation under section 171.24, a gross misdemeanor, is to be served consecutively to his felony conviction, his sentence falls under section 609.15, which provides:

> When a court imposes sentence for a misdemeanor or gross misdemeanor offense and specifies that the sentence shall run consecutively to any other sentence, the court may order the defendant to serve time in custody for the consecutive sentence in addition to any time in custody the defendant may be serving for any other offense, including probationary jail time or imprisonment for any felony offense.

Minn.Stat. § 609.15, subd. 1(b) (2002).

■ In order to address whether the sentencing court had authority to sentence Kier to the commissioner of corrections for his 12–month sentence, this court must determine the legislature's intent when it enacted section 609.15. *See* Minn.Stat. § 645.16 (2002) (stating primary goal is to effectuate intent of legislature). "[W]here the intention of the legislature is clearly manifested by plain and unambiguous language, [courts] have neither the need nor the permission to engage in statutory interpretation." *Mutual Servs. Cas. Ins. Co. v. League of Minnesota Cities Ins. Trust,* 659 N.W.2d 755, 760 (Minn.2003).

■ We conclude the language of section 609.15 clearly and unambiguously demonstrates the legislature's intent to allow district court's to commit a person sentenced for a gross misdemeanor sentence to the custody of the commissioner of corrections when the sentence is consecutive to a felony sentence that has already placed the offender in the custody of the commissioner of corrections. We also note that section 609.105 specifically allows a 12–month sentence to be served at any "other place authorized by law." Minn.Stat. § 609.105, subd. 3. The sentencing court did not abuse its discretion when it sentenced Kier in a manner explicitly allowed by law.

■ 2. Kier also argues that because Minn.Stat. § 169A.276, subd. 1(b) (2002) allows the district court to stay the mandatory minimum sentence, the sentencing court abused its discretion by not staying his 66–month sentence for refusal to submit to testing or his 12–month sentence for driving after cancellation. Kier's sentence, however, like all sentences in Minnesota, is controlled not only by relevant statutory

mandates, but also by the Minnesota Sentencing Guidelines. *See* Minn. Sent. Guidelines II.D ("The sentences provided in the Sentencing Guideline Grid are presumed to be appropriate for every case."); Minn. Sent. Guidelines II.E ("The presumptive duration of the prison sentence should be the mandatory minimum sentence according to statute or the duration of the prison sentence provided in the appropriate cell of the Sentencing Guidelines Grid, whichever is longer.").

Here, Kier was convicted of first-degree refusal to submit to testing. This is a severity level 7 offense. Minn. Sent. Guidelines V. Kier had a total criminal history score of 5. *See* Minn. Sent. Guidelines II.B (defining appropriate method for determining criminal history score). The presumptive sentence for a level 7 offense with a criminal history score of 5 is a 66–month commitment to the commissioner of corrections. Minn. Sent. Guidelines IV. The sentencing guidelines also make it clear that while a mandatory minimum sentence may be stayed, the sentencing court should presume the legislature intended the sentence to be executed. *See* Minn. Sent. Guidelines II.E ("When an offender has been convicted of an offense with a mandatory minimum sentence of one year and one day or more, the presumptive disposition is commitment to the Commissioner of Corrections."). Thus, Kier's presumptive sentence for the first-degree refusal to submit to testing was a 66–month commitment to the commissioner of corrections.

■ When factors that may justify departing from the presumptive sentence are present, a court must exercise its discretion and consider the factors. *State v. Curtiss,* 353 N.W.2d 262, 263 (Minn.App. 1984). But a "sentencing court *has no discretion* to depart from the sentencing guidelines unless aggravating or mitigating factors are present." *State v. Spain,* 590 N.W.2d 85, 88 (Minn.1999) (emphasis added).

Because the presumptive sentence under the sentencing guidelines is commitment to the commissioner of corrections, a stay of the sentence would require mitigating factors to be present. Kier was offered the opportunity to present any mitigating factors at the sentencing hearing; he did not. Kier's only argument on the refusal-to-submit-to-testing charge was to ask the court to "just impose the guideline sentence of 66 months instead of 69." Furthermore, Kier's trial counsel stated he had "no additions or corrections" to the presentence investigation report filed with the court. Because the record does not contain any substantial and compelling factors that would allow a departure, the sentencing court properly imposed the presumptive sentence. *Id.*

■ Driving after cancellation under section 171.24, subdivision 5, is a gross misdemeanor. Because the violation is a gross misdemeanor, the Minnesota Sentencing Guidelines do not apply. *State v. Lambert,* 392 N.W.2d 242, 244 (Minn.1986) (stating gross misdemeanor sentences are not covered by the Minnesota Sentencing Guidelines). Rather, any sentence within the legislatively prescribed limit, so long as the individual defendant is given the opportunity to be heard and the sentencing court considers relevant facts bearing on the exercise of sentencing discretion, is within the court's discretion. *See id.* at 243–44 (noting due process requirements for non-felony sentences in holding trial courts are allowed to adopt local sentencing guidelines for such cases). In the case of gross misdemeanors the legislature has set the maximum sentence of imprisonment at 12 months. *See* Minn.Stat. § 609.02 (2002) (stating felony is crime punishable by more than one year, misde-

meanor is crime punishable by maximum of 90 days, and gross misdemeanor is crime that is not felony or misdemeanor).

Kier's trial counsel argued that, if the court found the law mandated a consecutive sentence, the court should consider imposing no additional time on the driving after cancellation offense. Trial counsel argued: "The reason for this is that we believe that the offense conduct is already covered in the offense that he's receiving the guideline sentence on." At the conclusion of trial counsel's argument, the court asked Kier if he wished to add anything. Kier responded: "Well, I guess it's all been said." Kier was allowed an opportunity to be heard, but he failed to present anything for the sentencing court to consider when deciding whether to execute or stay the sentence. It was within the sentencing court's discretion to execute Kier's 12–month sentence.

▮▮▮▮ 3. Kier also argues Juve did not have probable cause to arrest him for driving under the influence of alcohol. The determination of probable cause is a mixed question of fact and law. The district court's findings of fact will not be set aside unless they are clearly erroneous. *State v. Horner,* 617 N.W.2d 789, 795 (Minn.2000). Although this court gives "due weight to inferences drawn from those facts by resident judges, we review de novo the legal conclusion of whether probable cause existed." *Id.* (quotation omitted).

▮▮▮▮ "The test of probable cause to arrest is whether the objective facts are such that under the circumstances a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *State v. Wynne,* 552 N.W.2d 218, 221 (Minn. 1996) (quotation omitted). "An officer needs only one objective indication of intoxication to constitute probable cause to

believe a person is under the influence." *State v. Carver,* 577 N.W.2d 245, 248 (Minn.App.1998) (quotation omitted). Common indicia of intoxication include an odor of alcohol, bloodshot and watery eyes, slurred speech, and an uncooperative attitude. *Holtz v. Commissioner of Pub. Safety,* 340 N.W.2d 363, 365 (Minn.App. 1983); *Hasbrook v. Commissioner of Pub. Safety,* 374 N.W.2d 592, 593, 594 (Minn. App.1985).

Here, Juve stated he "observed a strong odor of an alcoholic beverage coming from the driver's breath, he had blood-shot watery eyes and slurred speech." The district court accepted Juve's report as a credible narrative of the events that occurred. There is nothing in the record that would support a conclusion that it was clearly erroneous for the district court to find Juve smelled an alcoholic beverage on Kier's breath, noticed he had bloodshot and watery eyes, or that Kier's speech was slurred. To the contrary, the events recorded on Juve's in-dash camera prior to Kier's arrest would unquestionably lead a person of ordinary care and prudence to entertain an honest and strong suspicion that Kier was driving under the influence of alcohol. We conclude Juve had probable cause to suspect Kier was driving under the influence of alcohol at the time of the arrest.

## DECISION

The district court did not abuse its discretion in placing Kier in the custody of the commissioner of corrections for both his 66–month sentence and his consecutive 12–month sentence. Juve had probable cause to arrest Kier for driving under the influence.

**Affirmed.**