*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2236**

State of Minnesota,
Respondent,

vs.

Yee Leng Vue,
Appellant.

**Filed January 5, 2015
Affirmed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-13-5440

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Shuly Her, Der Yang, Village Lawyer, LLC, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**JOHNSON**, Judge

Yee Leng Vue was convicted of first-degree driving while impaired because he refused to submit to a chemical test. On appeal, he challenges the district court's denial of his pre-trial motion to dismiss the complaint. We affirm.

# FACTS

This appeal arises from a traffic stop in north Minneapolis during the evening of June 8, 2012. Officer William Gregory and Officer Richard Walker were driving northbound on North Fourth Street while on routine patrol. As the officers approached the intersection with 26th Avenue North, Officer Gregory saw a vehicle go through a red light and turn left. Based on their observation of this traffic violation, the officers stopped the vehicle. Before they approached the vehicle, Officer Gregory checked the vehicle's license plate number in a law-enforcement database and learned that the registered owner of the vehicle, K.Y., had an outstanding arrest warrant. The database did not provide Officer Gregory with access to a photograph of K.Y.

Officer Walker approached the driver's side of the vehicle and asked the driver, Vue, for his identification and for proof of insurance. Vue was unable to produce either type of document. Officer Gregory later testified that he and his colleague did not know whether Vue was the registered owner of the vehicle who had outstanding arrest warrants and decided to investigate further. Officer Walker asked Vue to step out of the vehicle, pat-frisked him, and placed him in the back seat of the squad car.

Both of Vue's passengers were unable to produce a valid driver's license or photo identification. Because none of the three men was a licensed driver, the officers decided to impound the vehicle. The officers conducted a routine inventory search of the vehicle before it was towed. During the inventory search, the officers found a substance in a pocket on the driver's door that they believed to be a controlled substance. The officers requested a K-9 unit to sniff the vehicle. The dog did not indicate that controlled

2

substances were in the vehicle. It appears that the officers thereafter discontinued their investigation into controlled substances. After the vehicle was towed, the officers released Vue's passengers.

The officers continued to detain Vue based on their inability to identify him and their suspicion that he had outstanding arrest warrants. Using the name Vue provided, the officers accessed his driver's record, which allowed them to confirm Vue's identity. But Vue's driver's record also revealed that he had an extensive history of failure to appear in court and failure to pay fines. Based on that information, the officers decided that, rather than issue Vue a citation for failure to provide proof of insurance and failure to produce a valid driver's license and then release him, they would arrest him and take him to the jail for booking. *See* Minn. R. Crim. P. 6.01, subd. 1(a)(3).

While in transport to the jail, Vue slurred his words, was unable to focus on the officers' questions, and generally did not make sense when speaking to the officers. Officer Gregory said to him, "You seem pretty drunk." Vue responded by saying that he probably was drunk and that he had had approximately four drinks. Based on Vue's conduct and statements, the officers suspected him of having committed the offense of driving while impaired (DWI) and decided to take him to the police department's chemical-testing unit. After they arrived, Officer Patrick Windus read Vue the Implied Consent Advisory. Vue indicated to Officer Windus that he understood the advisory. Officer Windus asked Vue to submit to a urine test or a blood test. Vue refused.

In February 2013, the state charged Vue with one count of first-degree DWI for his refusal to submit to a chemical test, in violation of Minn. Stat. § 169A.20, subd. 2

3

(2012). In June 2013, Vue moved to suppress evidence and to dismiss the complaint for four reasons: (1) the officers did not have a reasonable, articulable suspicion to stop his vehicle, (2) the officers unreasonably expanded the scope and duration of the investigatory stop, (3) the officers did not have probable cause to believe that Vue had committed a DWI offense, and (4) the statute that criminalizes refusal is unconstitutional. The district court held an evidentiary hearing at which it heard testimony from Vue, his two passengers, Officer Gregory, and Officer Windus. The district court received three exhibits into evidence: (1) the Implied Consent Advisory, (2) a DVD containing a video-recording taken by a camera mounted inside the squad car; and (3) a transcript of the video-recording.

On July 3, 2013, the district court issued a ten-page order and memorandum in which it denied Vue's motion. On July 8, 2013, Vue and the state agreed to submit the case to the district court on stipulated evidence, pursuant to rule 26.01, subdivision 4, of the Minnesota Rules of Criminal Procedure. Three days later, while the case was pending before the district court, Vue moved for reconsideration of the order denying his motion to dismiss. Vue's motion for reconsideration was based on newly discovered evidence, namely, a certificate of title indicating that the vehicle Vue was driving on the night of his arrest, June 8, 2012, was owned by Vue's brother, V.C., between November 16, 2009, and October 31, 2010.

On July 12, 2013, the district court found Vue guilty of the offense charged and issued an eight-page order with its findings of fact and its verdict. The district court denied Vue's motion for reconsideration in a footnote, explaining that the additional

evidence would not alter the district court's analysis of the Fourth Amendment issues. In August 2014, the district court imposed a 42-month sentence but stayed execution of the sentence for five years. Vue appeals.

## D E C I S I O N

Vue argues that the district court erred by denying his pre-trial motion to suppress evidence and to dismiss the complaint. Vue renews three of the four arguments he made to the district court.

### A. Expansion of Investigatory Stop

Vue argues that the district court erred by denying his pre-trial motion because the police officers did not have proper grounds for expanding the scope and duration of the investigatory stop. This court applies a clear-error standard of review to a district court's findings of fact concerning an investigatory stop. *State v. Chavarria-Cruz*, 784 N.W.2d 355, 363 (Minn. 2010). If the relevant facts are undisputed, this court applies a *de novo* standard of review to a district court's ruling that an investigatory stop is valid. *State v. Yang*, 774 N.W.2d 539, 551 (Minn. 2009).

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The Fourth Amendment also protects the right of the people to be secure in their motor vehicles. *See State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). As a general rule, a law-enforcement officer may not seize and search a person or a person's vehicle without probable cause. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

5

A law-enforcement officer may, however, "'consistent with the Fourth Amendment, conduct a brief, investigatory stop'" of a motor vehicle if "'the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968))). A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-suspicion standard is not high, but the suspicion must be more than an "inchoate and unparticularized suspicion," *Timberlake*, 744 N.W.2d at 393 (quotation omitted), and "something more than an unarticulated hunch," *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted). An officer "must be able to point to something that objectively supports the suspicion at issue." *Id.* (quotation omitted); *see also Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880.

An investigatory stop generally must be limited in scope to the original purpose of the stop, *State v. Diede*, 795 N.W.2d 836, 845 (Minn. 2011), and "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop,'" *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983) (plurality opinion)). The scope and duration of an investigatory stop may be expanded only if doing so would be "reasonably related to the investigation of an offense lawfully discovered or suspected during the stop," *State v.*

6

*Askerooth*, 681 N.W.2d 353, 370 (Minn. 2004), and only if the officer "develops a reasonable, articulable suspicion" concerning the additional offenses "within the time necessary to resolve the originally-suspected offense,'" *Diede*, 795 N.W.2d at 845 (quoting *Wiegand*, 645 N.W.2d at 136). Thus, "each incremental intrusion during the stop" must be "'tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry*.'" *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012) (quoting *Askerooth*, 681 N.W.2d at 365).

In this case, Vue concedes that the officers had reasonable, articulable suspicion to stop his vehicle, but he contends that they did not have a proper basis for expanding the scope and duration of the stop. Specifically, Vue contends that the officers did not have justification to remove Vue from the vehicle and place him in the squad car, to conduct a thorough inventory search, or to investigate their suspicion of controlled substances.

The district court found that the officers acted reasonably at each stage of the investigatory stop. The district court found that it was reasonable to remove Vue from the vehicle because the officers needed to determine his identity and needed to cite him for failure to provide a driver's license and proof of insurance. The district court found that it was reasonable to impound the vehicle after performing an inventory search because neither Vue nor any of his passengers was known to be licensed to drive. And the district court found that it was reasonable to investigate the suspicion of controlled substances because the officers found an unknown substance during the inventory search that appeared to be a controlled substance.

7

It is somewhat unclear whether Vue is challenging the district court's findings of fact or its legal conclusion that the officers acted reasonably. Vue does not cite any caselaw in this part of his appellate brief. Vue also does not point to any evidence that conflicts with the district court's findings. Vue simply contends that the officers could have skipped certain investigative steps or could have investigated more quickly. We believe that the district court did not err in either its findings of fact or its conclusions of law. An officer's investigation is not prohibited by the Fourth Amendment so long as the officer's actions are "reasonably related to the investigation of an offense lawfully discovered or suspected during the stop," *Askerooth*, 681 N.W.2d at 370, and are taken "within the time necessary to resolve the originally-suspected offense," *Diede*, 795 N.W.2d at 845 (quotation omitted). The evidence in the record supports the district court's findings and conclusions.

Thus, Vue has not demonstrated that the district court erred on the ground that the officers unreasonably expanded the scope and duration of the investigatory stop.

**B. Probable Cause**

Vue argues that the district court erred by denying his pre-trial motion because the officers did not have probable cause to suspect him of DWI, which is a prerequisite of chemical testing under the implied-consent statute. This court applies a clear-error standard of review to a district court's findings of fact concerning whether officers had probable cause. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005). If the relevant facts are undisputed, this court applies a *de novo* standard of review to a district court's ruling concerning the existence of probable cause. *Id.*

8

Probable cause "exists when the 'objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed.'" *State v. Dickey*, 827 N.W.2d 792, 796 (Minn. App. 2013) (quoting *In re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997)). "An officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence." *State v. Kier*, 678 N.W.2d 672, 678 (Minn. App. 2004) (quotation omitted), *review denied* (Minn. June 15, 2004). "Common indicia of intoxication include an odor of alcohol, bloodshot and watery eyes, slurred speech, and an uncooperative attitude." *Id.*

The district court found that the officer's determination of probable cause while Vue was in the squad car was supported by multiple indicia of drunkenness: Vue's slurred speech, his inability to focus on the officers' repeated questions, and his admission that he consumed four alcoholic beverages. Vue does not appear to challenge the legal conclusion that naturally would flow from those facts. Rather, he attempts to cast doubt on the officer's testimony that he did not perceive drunkenness throughout the investigative stop and noticed it for the first time while driving Vue to the jail. Vue's argument does not provide us with any reason to conclude that the district court clearly erred in its findings of fact.

Thus, Vue has not demonstrated that the district court erred on the ground that the officers did not have probable cause to require chemical testing.

## C. Constitutionality of Refusal Statute

Vue argues that the district court erred by denying his pre-trial motion because the criminal refusal statute is unconstitutional. This court applies a *de novo* standard of review to a district court's ruling concerning the constitutionality of a statute. *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011).

Vue contends that Minnesota's implied-consent statute is unconstitutional because it is inconsistent with *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). Contrary to Vue's contention, the holding in *McNeely* is relatively narrow. The Supreme Court held that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 133 S. Ct. at 1568. Accordingly, the Court concluded that the evidence in that case arising from a forcible, warrantless blood test (which was *not* performed pursuant to Missouri's implied-consent statute) was properly suppressed by the Missouri trial court. *Id.* at 1557, 1568. The Court did not hold or suggest that the Missouri implied-consent statute was constitutionally infirm. In fact, the Court spoke approvingly of implied-consent statutes by noting that its opinion does not "undermine the governmental interest in preventing and prosecuting drunk-driving offenses" through the use of "legal tools" such as "implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing." *Id.* at 1566 (plurality opinion).

The Minnesota Supreme Court emphasized this portion of *McNeely* in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), a criminal

case concerning the validity of a person's consent to chemical testing pursuant to the implied-consent statute:

> Brooks's argument is inconsistent with the Supreme Court's discussion of implied consent laws in *McNeely*. As the Supreme Court recognized in *McNeely*, implied consent laws, which "require motorists, as a condition of operating a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense," are " *legal tools*" states continue to have to enforce their drunk driving laws. The Court noted that these laws typically require suspected drunk drivers to take a test for the presence of alcohol and mandate that a driver's license will be revoked if they refuse a test. By using this "legal tool" and revoking a driver's license for refusing a test, a state is doing the exact thing Brooks claims it cannot do -- conditioning the privilege of driving on agreeing to a warrantless search.

*Id*. at 572 (alteration in original) (citations omitted) (quoting *McNeely*, 133 S. Ct. at 1566). Although the statements about implied-consent statutes in *McNeely* and *Brooks* were not essential to the decision in either case, the statements tend to show that Minnesota's implied-consent statute, including the criminal penalty for refusal, is not in violation of the Fourth Amendment. Furthermore, this court has held that "[t]he state is not constitutionally precluded from criminalizing a suspected drunk driver's refusal to submit to a chemical test." *State v. Bernard*, 844 N.W.2d 41, 47 (Minn. App. 2014), *review granted* (Minn. May 20, 2014).

Vue also appears to contend that Minnesota's implied-consent statute violates the unconstitutional-conditions doctrine. In a civil case concerning the revocation of a driver's license after her arrest for DWI, this court concluded that Minnesota's implied-consent statute does not violate the unconstitutional-conditions doctrine. *Stevens v.*

11

*Comm'r of Pub. Safety*, 850 N.W.2d 717, 724-731 (Minn. App. 2014). Vue has not identified any reason why the rationale of *Stevens* should not apply in this case.

Thus, Vue has not demonstrated that the district court erred on the ground that Minnesota's implied-consent statute, including the provision for criminal punishment of refusal, is unconstitutional.

Before concluding, we note that Vue's appellate brief also includes an argument that the evidence is insufficient to support his conviction. The sufficiency of the evidence is not reviewable on appeal after a finding of guilt in a court trial conducted pursuant to rule 26.01, subdivision 4, of the Minnesota Rules of Criminal Procedure. One of the prerequisites of such a trial is the defendant's acknowledgment that "appellate review will be of the pretrial issue, but not of the defendant's guilt, or of other issues that could arise at a contested trial." Minn. R. Crim. P. 26.01, subd. 4(f). In this case, Vue made this acknowledgment. Thus, he may not challenge the sufficiency of the evidence on appeal. *See id.*; *State v. Rasmussen*, 749 N.W.2d 423, 428 (Minn. App. 2008); *State v. Knoll*, 739 N.W.2d 919, 921 (Minn. App. 2007); *see also generally State v. Lothenbach*, 296 N.W.2d 854, 857-58 (Minn. 1980).

In sum, the district court did not err by denying Vue's pre-trial motion to suppress evidence and dismiss the complaint.

**Affirmed.**