*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1223**

Matthew Allan White, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed June 8, 2015
Affirmed
Reyes, Judge**

Nicollet County District Court
File No. 52CV13708

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Rachel E. Bell, Assistant Attorney General, St. Paul, Minnesota (for respondent)

        Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

        In an appeal from a district court order sustaining the revocation of his driver's license under the implied-consent law after he failed an evidentiary breath test, appellant argues that (1) the evidence from the field sobriety tests was obtained in violation of his

Fourth Amendment rights; (2) the evidence from the evidentiary breath test was obtained in violation of his Fourth Amendment rights; and (3) Minnesota's test-refusal statute is unconstitutional. We affirm.

**FACTS**

On September 20, 2013 at 12:19 a.m. while on patrol in St. Peter, Officer Penning observed appellant Matthew White staggering and swaying from side to side as he walked along the sidewalk. He then observed White get into a pickup truck, exit a parking lot, and drive through an intersection without obeying a stop sign. As Officer Penning attempted to catch up to White's truck, he observed the vehicle cross over the centerline twice before being jerked back into its lane. After the truck crossed the centerline for a third time, Officer Penning activated his emergency lights and initiated a traffic stop.

Officer Penning called another officer to the scene for backup. He identified White as the driver. Officer Penning testified that he could smell an odor of alcohol coming from inside White's truck. He stated that White appeared to "sway his head from side to side" and mumbled his speech. When Officer Penning asked White if he had anything to drink, White replied that he had not. Officer Penning asked him to exit the vehicle to perform field sobriety tests, but White refused. Officer Penning informed White that if he did not get out of the truck, he would place White under arrest for suspicion of drunk driving. White again refused, stating that he wanted another officer present. After Officer Penning's partner arrived, White agreed to get out of the vehicle.

2

As White exited and began walking toward the rear of his truck, Officer Penning smelled an odor of alcohol coming from White. Officer Penning administered a horizontal gaze nystagmus (HGN) test, a walk-and-turn test, and a one-legged stand test. White failed all three of these tests. At that time, Officer Penning requested that White take a preliminary breath test (PBT). White asked Officer Penning if he had to take the test and whether the results would be admissible in court. Officer Penning replied no to both questions, telling White that he only wanted to use the PBT to determine White's general level of impairment and that he would be arresting White anyway. After White still refused, Officer Penning arrested White for suspicion of driving while impaired and White was transported to the Nicollet County Jail.

While at the jail, Officer Penning read Minnesota's implied-consent advisory to White, informing him that refusal to take a chemical test is a crime and that he had the right to consult an attorney. White responded that he understood the advisory and that he wished to consult with an attorney. Officer Penning provided White with multiple phone books and White's personal cell phone. After approximately 45 minutes, White was not receiving any return calls, and Officer Penning informed White that he would need to make a decision as to testing. White submitted to the breath test, and the result was an alcohol concentration of .18.

Based on the test results, the commissioner of public safety revoked White's driving privileges under the implied-consent law. White filed a petition seeking reinstatement of his driving privileges, which the district court denied. This appeal follows.

**D E C I S I O N**

White makes three arguments on appeal: (1) the evidence from the field sobriety tests was obtained in violation of his Fourth Amendment rights; (2) the evidence from the evidentiary breath test was obtained in violation of his Fourth Amendment rights; and (3) Minnesota's test-refusal statute is unconstitutional.

**I.      Did the district court err by concluding that the evidence from the field sobriety tests was obtained in accordance with the Fourth Amendment?**

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10.  As a general rule, a search requires either a warrant or an exception to the warrant requirement, such as the person's consent, *State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), or the existence of exigent circumstances, *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013).  A challenge to a license revocation based on an assertion of a violation of the Fourth Amendment is reviewed de novo.  *Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010); *see also Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004) ("When the facts are not in dispute, the validity of a search is a question of law subject to de novo review.").

4

**A.      Justification required to initiate field sobriety tests**

White first argues that field sobriety tests are full searches under the Fourth Amendment subject to the probable-cause standard and that evidence resulting from such tests is inadmissible absent a warrant or a valid exception to the warrant requirement.

White's argument is inconsistent with the relevant caselaw. In *State, Dep't of Pub. Safety v. Juncewski*, the supreme court held that an officer may request a preliminary breath test if he possesses "specific and articulable facts" that form a basis to believe that a person has been driving a motor vehicle while under the influence. 308 N.W.2d 316, 321 (Minn. 1981). Since *Juncewski*, this court has applied a reasonable-and-articulable-suspicion test in evaluating the administering of field sobriety tests. *See*, *e.g.*, *State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (determining that the trooper developed reasonable articulable suspicion to perform an initial stop and concluding that two indicia of intoxication reasonably justified field sobriety tests and preliminary breath testing). Moreover, this court has specifically rejected White's argument that field sobriety tests and PBTs must be predicated on probable cause. *State v. Vievering*, 383 N.W.2d 729, 730 (Minn. App. 1986) ("An officer need not possess probable cause to believe that a DWI violation has occurred in order to administer a preliminary breath test."), *review denied* (Minn. May 16, 1986).

White contends that *Juncewski* and its progeny are no longer good law given *McNeely*'s determination that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates

5

that they do so." 133 S. Ct. at 1561. White misinterprets *McNeely*. *McNeely* stemmed from an unwarranted, nonconsensual blood sample improperly premised on the exigency created by the natural dissipation of alcohol. *Id*. at 1558. Because *McNeely* addressed only a single-factor exigency exception to the warrant requirement, it is not so far reaching as to require probable cause prior to an issuing of a field sobriety test or PBT. Because *McNeely* did not abrogate *Juncewski* and its progeny, Officer Penning was only required to have a reasonable, articulable suspicion that White was driving under the influence to initiate field sobriety tests.

Reasonable, articulable suspicion exists "when an officer observes unusual conduct that leads the officer to reasonably conclude in light of his or her experience that criminal activity may be afoot." *In re Welfare of G.M*., 560 N.W.2d 687, 691 (Minn. 1997). The reasonable-suspicion standard is not high, but the suspicion must be based on particularized and objective facts rather than on a mere hunch. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008).

The facts here support the district court's conclusion that Officer Penning had a reasonable, articulable suspicion that White was driving under the influence. Officer Penning observed White (1) staggering and swaying from side to side prior to getting into his truck; (2) running a stop sign through an intersection; (3) driving over the centerline three times; (4) smelling of alcohol; (5) having slurred speech and swaying his head; and (6) being uncooperative when he was asked to exit the vehicle. *See State v. Prax*, 686 N.W.2d 45, 48-49 (Minn. App. 2004) (analyzing appellant's driving conduct—crossing over a lane divider and committing other traffic violations—as indicators of intoxication),

6

*review denied* (Minn. Dec. 14, 2004); *State v. Kier*, 678 N.W.2d 672, 678 (Minn. App. 2004) ("Common indicia of intoxication include an odor of alcohol, . . . , slurred speech, and an uncooperative attitude."). Moreover, the fact that White's conduct occurred during the middle of the night provides further suspicion of intoxication. *See State v. Lee*, 585 N.W.2d 378, 383 (Minn. 1998) (incorporating the time of day into the probable cause determination and recognizing that drinking is often involved later at night).

## B. White's arrest

Even if we do not consider the results of the field sobriety tests, there is enough evidence to rise to the level of probable cause to effectuate an arrest. Probable cause exists when a "person of ordinary care and prudence, viewing the totality of circumstances objectively, would entertain an honest and strong suspicion that a specific individual has committed a crime." *State v. Ortega*, 770 N.W.2d 145, 150 (Minn. 2009) (emphasis omitted). "Probable cause is something more than a mere suspicion and something less than evidence that would sustain a conviction." *State v. Evans*, 373 N.W.2d 836, 838 (Minn. App. 1985), *review denied* (Minn. Nov. 1, 1985).

Again, the totality of the circumstances reveals that Officer Penning observed White (1) staggering prior to getting into his truck; (2) running a stop sign; (3) driving over the centerline; (4) smelling of alcohol; (5) having slurred speech and swaying his head; and (6) being uncooperative when asked to exit the vehicle. All of which occurred late at night. Even before failing the field sobriety tests, White's conduct rose to the level of probable cause, thereby justifying his arrest for suspicion of driving while intoxicated. The failed field sobriety tests only further supported probable cause to arrest White.

**II.** **Did the district court err by concluding that the evidence from the evidentiary breath test was obtained in accordance with the Fourth Amendment?**

White next argues that the evidence from the evidentiary breath test was obtained in violation of his Fourth Amendment rights. Generally, evidence seized in violation of the Constitution is inadmissible for criminal prosecution. *State v. Jackson*, 742 N.W.2d 163, 177-78 (Minn. 2007). Although civil in nature, we still apply the exclusionary rule to implied-consent license-revocation proceedings. *Harrison*, 781 N.W.2d at 920. White argues that the test results must be excluded because they were obtained by a warrantless search, and the commissioner did not show that an exception to the warrant requirement applied. We disagree.

White's evidentiary breath test was administered after his arrest pursuant to the search-incident-to-arrest exception to the warrant requirement. Under this exception, an officer may search a suspect when the officer has probable cause to arrest the suspect. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009). In *State v. Bernard*, the Minnesota Supreme Court upheld the constitutionality of Minnesota's test-refusal statute as it applied to Bernard's case, concluding that a warrantless breath test did not violate the Fourth Amendment because it was a search incident to Bernard's valid arrest. 859 N.W.2d 762, 766-67 (Minn. 2015). We reach the same conclusion here as Officer Penning had probable cause to arrest White for suspicion of driving while intoxicated. And because Officer Penning had probable cause to arrest, White's warrantless breath test was constitutional as a search incident to a valid arrest. *See id.* at 767.

White argues that the search-incident-to-arrest exception does not apply because there was no concern for officer safety or the preservation of evidence. Once again, however, *Bernard* is dispositive. There, the supreme court acknowledged that a concern for officer safety or preservation of evidence is required to support the constitutionality of a warrantless search of the area where a defendant was arrested. *Id*. at 768. The court refused, however, to extend this requirement to warrantless searches of the body of a person validly arrested. *Id*. at 770-71. Instead, the court determined that warrantless searches of a person validly arrest were "categorically reasonable under the Fourth Amendment." *Id*. at 769. Therefore, the commissioner did not need to prove the existence of concerns for officer safety or preservation of evidence because "[i]n a custodial arrest situation, those concerns are always present and do not need to be specifically identified or proven to justify a search." *Id*. at 770. Thus, the results of White's evidentiary breath test are admissible because they were obtained by a search incident to a valid arrest.

### III. Is Minnesota's test-refusal statute unconstitutional?

White argues that Minnesota's test-refusal statute is unconstitutional because it violates both his substantive due-process rights and the doctrine of unconstitutional conditions. This argument implicates a discussion of both Minnesota's implied-consent statute, Minn. Stat. § 169A.50-.53 (2012), and Minnesota's test-refusal statute, Minn. Stat. § 169A.20, subd. 2 (2012). Under the implied-consent statute, any person who drives a motor vehicle in the state consents "to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat.

9

§ 169A.51, subd. 1(a). A law-enforcement officer may request a test of a person if the officer has probable cause to believe that the person has committed the offense of DWI and if, among other things, the person has been arrested for DWI. Minn. Stat. § 169A.51, subd. 1(b)(1) (2012). The test-refusal statute makes it a crime to refuse this test. Minn. Stat. § 169A.20, subd. 2. Refusal can also result in the commissioner of public safety temporarily revoking the person's driver's license. Minn. Stat. § 169A.52, subd. 3 (2012).

The constitutionality of a statute is a question of law to which this court applies a de novo standard of review. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). We presume that Minnesota statutes are constitutional and will declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *Id*. at 182 (quotation omitted). The party challenging a statute on constitutional grounds must meet "the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted).

### A. Substantive due-process challenge

White argues that the implied-consent advisory violates his due-process rights because it improperly threatens criminal charges under an unconstitutional criminal statute that the state is not authorized to impose. The due-process clauses of the United States and Minnesota Constitutions "prohibit 'certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them.'" *Boutin v. LaFleur*, 591 N.W.2d 711, 716 (Minn. 1999) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990)). White argues that a fundamental right has been

10

implicated here—the fundamental right to refuse a constitutionally unreasonable search. The Minnesota Supreme Court rejected such an argument in *Bernard*. It determined that when a warrantless breath test would be constitutional under the search-incident-to-arrest exception, no fundamental right is implicated. *Bernard*, 859 N.W.2d at 773.

Because no fundamental right is implicated, we assess the constitutionality of the test-refusal statute using rational-basis review. *See State v. Behl*, 564 N.W.2d 560, 567 (Minn. 1997). The Minnesota Supreme Court has held that "the state has a compelling interest in highway safety justifying efforts to keep impaired drivers off the road." *Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 417 (Minn. 2007). The supreme court has also held that "it is rational to conclude that criminalizing the refusal to submit to a breath test relates to the [s]tate's ability to prosecute drunk drivers and keep Minnesota roads safe." *Bernard*, 859 N.W.2d at 774. Because the test-refusal statute is a reasonable means to a permissive object, White's due-process rights were not violated.

## B. Unconstitutional-conditions doctrine

The unconstitutional-conditions doctrine prevents the state from conditioning privileges on the relinquishment of constitutional rights. *Frost v. R.R. Comm'n*, 271 U.S. 583, 592-94, 46 S. Ct. 605, 606-07 (1926). This court has previously concluded that the implied-consent statute does not violate the unconstitutional-conditions doctrine. *Stevens v. Comm'r of Public Safety*, 850 N.W.2d 717, 723-25 (Minn. App. 2014). We based our conclusion on several factors, including the fact that (1) the unconstitutional-conditions doctrine has not been applied to the Fourth Amendment; (2) the implied-consent statute does not authorize a search inconsistent with the Fourth Amendment because the statute

11

requires the driver to expressly consent to testing before a test is given; (3) any search authorized by the implied-consent statute does not violate the Fourth Amendment because the statute is a reasonable method of promoting the state's interest in enforcing its DWI laws; and (4) the implied-consent statute does not coerce a driver into surrendering his or her Fourth Amendment rights. *Id*. at 723-31. Appellant has not shown why the same reasoning does not apply here.

In sum, because White has failed to satisfy his "very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional," his constitutional argument fails. *Johnson*, 813 N.W.2d at 11 (quotation omitted).

**Affirmed.**