*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0991**

State of Minnesota,
Respondent,

vs.

Ricardo Leonard Bowman,
Appellant.

**Filed June 8, 2015
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-12-34681

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence.

We affirm.

**FACTS**

Minneapolis Police Officers Brandy Steberg and his partner were on a directed patrol shift in the Fourth Precinct on October 16, 2012, and were not required to respond to 911 calls. Their primary responsibility was to respond to livability issues, i.e., street-level crimes. Around 11:00 p.m., the officers were patrolling the area of 16th Avenue North and Logan Avenue North, due to several recent 911 calls and a shots-fired call that had been placed about a half-hour earlier near 15th Avenue North and Irving Avenue North. Although the officers were not investigating the shots-fired call, it was one of the reasons they were patrolling the area.

While the officers were traveling westbound on 16th Avenue North, slowly approaching James Avenue North, Officer Steberg observed a male, later identified as appellant Ricardo Leonard Bowman, lurking in the alley of James Avenue North and Knox Avenue North behind a small tree near the window of a residence. Officer Steberg thought it strange that someone would be standing next to a window in an alley, late at night, not walking to or from anywhere. When Bowman spotted the officers' squad car, he immediately started walking northbound out of the alley, toward the officers. When Bowman reached 16th Avenue North, he turned and walked westbound. From a distance of approximately 15 to 20 feet away, Officer Steberg shined the squad-car spotlight on Bowman and observed that Bowman was carrying a large beer can.

From the squad car, Officer Steberg asked Bowman to stop and talk to him, and Bowman acquiesced. Officer Steberg then exited the squad car and approached Bowman. When Officer Steberg was within arm's reach of him, Bowman began to look around,

2

tensed up, grabbed his waistband, and ran eastbound on the sidewalk. Concerned that Bowman might have a concealed weapon in his waistband, Officer Steberg pursued and tackled him within a few yards, and the officers pinned him to the ground. Officer Steberg then observed a two-tone handgun sticking out of Bowman's waistband. The officers took possession of the handgun and discovered that it was loaded. They also discovered that the beer can that Bowman had been carrying was unopened and that Bowman lived on the same block as the residence near which the officers first spotted him. The officers arrested Bowman and inventoried the handgun.

Respondent State of Minnesota charged Bowman with being a prohibited person in possession of a firearm and gave notice of its intention to use evidence obtained as a result of the search and seizure. Bowman moved to suppress the firearm, arguing that it was obtained in violation of his constitutional protections against unreasonable searches and seizures. At a *Rasmussen* hearing, the district court heard testimony from Officer Steberg and denied Bowman's suppression motion. Bowman then waived his rights to a jury trial, and the parties submitted the case to the court on stipulated facts. The court found Bowman guilty and sentenced him to 60 months' imprisonment.

This appeal follows.

## DECISION

Bowman argues that the district court erred by denying his motion to suppress the firearm. "When reviewing a district court's pretrial order on a motion to suppress evidence, [an appellate court] review[s] the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v.*

3

*Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). "When the facts are not in dispute, [an appellate court's] review is de novo, and [it] must determine whether the police articulated an adequate basis for the search or seizure at issue." *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

Both the United States Constitution and the Minnesota Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects" from "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. But "[t]he United States Supreme Court has held that 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000)); *see also Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884–85 (1968).

### *Moment of seizure*

Bowman argues that he was seized when Officer Steberg shined the squad-car spotlight on Bowman and asked him to stop and talk. The state takes the position that the officers did not seize Bowman until he fled and Officer Steberg took pursuit.

"Not all encounters between the police and citizens constitute seizures." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). A seizure occurs when, "objectively and on the basis of the totality of the circumstances, . . . a reasonable person in the defendant's shoes would have concluded that he or she was not free to leave." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993). The Minnesota Supreme Court has adopted the *Mendenhall-Royer* standard for judging the totality of the circumstances surrounding an

4

encounter. *See id.* at 781–83 (citing *Florida v. Royer*, 460 U.S. 491, 501, 103 S. Ct. 1319, 1326 (1983); *United States v. Mendenhall*, 446 U.S. 544, 554–55, 100 S. Ct. 1870, 1877 (1980)).

> Under that standard, some of the circumstances that might indicate a seizure has taken place include: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Harris*, 590 N.W.2d at 98 (quotations omitted). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Mendenhall*, 446 U.S. at 555, 100 S. Ct. at 1877.

Under the totality of circumstances in this case, we conclude that a reasonable person in Bowman's position would not have felt free to leave after Officer Steberg shined the spotlight on him and asked that he stop and talk. At that moment, the officers seized Bowman. We next must determine whether Officer Steberg had reasonable suspicion of criminal activity when he seized Bowman.

*Reasonable suspicion for seizure*

The Minnesota Supreme Court has recognized that "the reasonable suspicion standard is not high," but a seizure cannot be based on a mere "inchoate and unparticularized suspicion or hunch." *Timberlake*, 744 N.W.2d at 393 (quotations omitted). An officer "must articulate a 'particularized and objective basis for suspecting

5

the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 695 (1981)).

"[Appellate courts] consider the totality of the circumstances when determining whether reasonable, articulable suspicion exists." *Flowers*, 734 N.W.2d at 251. "[Appellate courts] evaluate whether a reasonable, articulable suspicion exists from the perspective of a trained police officer, who may make 'inferences and deductions that might well elude an untrained person.'" *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014) (quoting *Cortez*, 449 U.S. at 418, 101 S. Ct. at 695).

Here, the officers were patrolling an area that had several recent 911 calls, complaints about livability issues, and a very recent shots-fired call. Although mere presence in a high-crime area alone is insufficient to justify a stop, the character of a location is a factor that may support reasonable suspicion. *See Wardlow*, 528 U.S. at 124, 120 S. Ct. at 676) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."); *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) ("[D]efendant's evasive conduct after eye contact with police, combined with his departure from a building with a history of drug activity, justified police in reasonably suspecting criminal activity.").

Officer Steberg observed Bowman in an alley late at night, standing behind a tree next to a window of a residence. While Officer Steberg acknowledged that he did not observe Bowman looking into the window and did not know whether Bowman lived at the residence, he stated that Bowman's behavior appeared strange and suspicious. "A

6

determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S. Ct. 744, 753 (2002). And as the United States Supreme Court has explained, an officer is permitted to detain an individual to resolve an ambiguity resulting from conduct that may be susceptible of an innocent explanation. *See Wardlow*, 528 U.S. at 125, 120 S. Ct. at 677 ("[I]n *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. . . . *Terry* recognized that the officers could detain the individuals to resolve the ambiguity."). The officers stopped Bowman to investigate his conduct in the alley and his possession of the beer can. Loitering on public property, or private property without consent of the owner, while in possession of an open container of intoxicating liquor or non-intoxicating malt liquor with intent to consume is a violation of Minneapolis, Minn., Code of Ordinances § 364.45 (2012). Officer Steberg testified that he frequently had seen the type of beer can carried by Bowman and that he stopped Bowman, in part, to investigate further whether Bowman was violating section 364.45.

Bowman immediately reacted upon spotting the officers' squad car, by walking away from the residence, out of the alley, and down the sidewalk. This conduct reasonably could suggest to the officers that Bowman did not live at the residence. Furthermore, this court has observed the United States Supreme Court's recognition "'that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.'" *State v. Houston*, 654 N.W.2d 727, 733 (Minn. App. 2003) (quoting *Wardlow*, 528 U.S. at 124, 120 S. Ct. at 676), *review denied* (Minn. Mar. 26, 2003). Regardless of whether Bowman's conduct can be characterized as "evasive," the

7

immediacy of Bowman's physical response to the presence of the squad car can be interpreted as "nervous" behavior. And although nervousness alone may not justify reasonable suspicion, nervousness is a circumstance that this court may consider. *Cf. State v. Smith*, 814 N.W.2d 346, 353 (Minn. 2012) (acknowledging that "[the supreme court] ha[s] been reluctant to rely on nervous behavior as evidence to support a reasonable, articulable suspicion of criminal activity" but considering defendant's nervousness in conjunction with evasive explanation for his shakiness and officers' inferences or deductions based on their training and experience). "[W]holly lawful conduct might justify the suspicion that criminal activity is afoot." *State v. Britton*, 604 N.W.2d 84, 89 (Minn. 2000). "[The reasonable suspicion] standard is met when an officer observes unusual conduct that leads the officer to reasonably conclude in light of his or her experience that criminal activity may be afoot." *Timberlake*, 744 N.W.2d at 393 (quotation omitted).

Given the totality of the circumstances in this case, we conclude that Officer Steberg's seizure of Bowman was not based on "mere whim, caprice or idle curiosity," *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004) (quotation omitted), but was supported by "reasonable, articulable suspicion," *Timberlake*, 744 N.W.2d at 393 (quotation omitted). The district court did not err by concluding that the stop was reasonable.

**Affirmed.**