*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1014**

State of Minnesota,
Respondent,

vs.

Justin Glenn Joecks,
Appellant.

**Filed February 29, 2016
Affirmed
Peterson, Judge**

McLeod County District Court
File No. 43-CR-15-347

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Daniel R. Provencher, Assistant County Attorney, Glencoe, Minnesota (for respondent)

Scott L. Nokes, Glencoe Law Office, Glencoe, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Klaphake,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from the denial of his motion to suppress evidence, appellant argues that the police lacked a reasonable, articulable suspicion of criminal activity to justify the investigatory stop of the motor vehicle that he was driving. We affirm.

## FACTS

Appellant Justin Glenn Joecks was charged with second-degree controlled-substance crime, possession of a firearm by a prohibited person, and fourth-degree driving while impaired (DWI) following a traffic stop. Joecks moved to suppress the evidence, challenging the justification for the stop. At the suppression hearing, a police officer testified about the events leading to the stop:

> Q: Were you on duty on March 8th of 2015 at about 10:00 in the morning?
> A: Yes, I was.
> Q: And were you on patrol on Main Street North in Hutchinson?
> A: Yes, I was.
> Q: What did you observe at that time and at that place?
> A: I observed a vehicle to my left, and I observed the driver of that vehicle to be [Joecks].
> Q: What did you do when you saw [Joecks] driving a vehicle that was adjacent to you on Main Street North?
> A: I recognized [Joecks] and I believed that he did not have a valid driver's license, so I requested Communications run his driver's license to see if he had a valid license.
> Q: What was the result of that check?
> A: I was told that [Joecks] did not have a valid license and that his driving status was revoked.
> . . . .
> Q: Did you then stop the vehicle?
> A: Yes, I did.

The officer testified that he was familiar with Joecks due to Joecks's previous encounters with law enforcement.

The district court denied the motion to suppress. Joecks then stipulated to the state's case to obtain review of the pretrial ruling, pursuant to Minn. R. Crim. P. 26.01, subd. 4. The district court convicted Joecks of second-degree controlled-substance crime and possession of a firearm by a prohibited person and dismissed the DWI charge. This appeal follows.

## DECISION

When reviewing a pretrial ruling on a motion to suppress evidence, an appellate court "review[s] the facts to determine whether, as a matter of law, the [district] court erred when it failed to suppress the evidence." *State v. Flowers*, 734 N.W.2d 239, 247 (Minn. 2007). A district court's ruling on a constitutional question involving a search or seizure is reviewed de novo. *State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007).

The United States and Minnesota Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "An investigatory stop of a vehicle is justified if police have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Yang*, 774 N.W.2d 539, 551 (Minn. 2009) (quotation omitted); *see also State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (stating that a traffic stop must be supported by "a reasonable, articulable suspicion that criminal activity is afoot") (quotation omitted)). "Police must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (quotation omitted).

3

The police officer testified that, when he saw Joecks driving, he believed that Joecks did not have a valid driver's license, and, after confirming this belief, he stopped Joecks. Joecks argues that the officer's testimony does not establish that he had a reasonable, articulable suspicion of criminal activity because the officer did not state (1) how he knew Joecks, (2) why he suspected that Joecks did not have a valid driver's license, and (3) why he chose to run a record search to determine whether Joecks had a valid driver's license.

Joecks challenges the officer's ability to identify him, arguing that

> a passing glance to the left through the glass of two passenger vehicles, while operating a motor vehicle, and then recognizing a person who you may have, at best, had a brief encounter with in the past somewhere in the community – and on top of that, who is wearing a baseball cap and sunglasses, is a stretch to justify the stop of a motor vehicle . . . .

But Joecks challenged the identification in district court, and the court found that the officer "credibly testified that the vehicles were stopped side by side, in broad daylight, and that given the close proximity of the vehicles, he recognized the driver of the adjacent vehicle as [Joecks]." We defer to this credibility determination. *See State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012) (stating that this court gives deference to a district court's credibility determinations when reviewing a pretrial order on a motion to suppress evidence). More specific testimony from the officer about how he knew Joecks could have affected the district court's credibility determination, but the court could make a credibility determination without such testimony.

Why the officer suspected that Joecks did not have a valid driver's license is irrelevant. The officer did not stop Joecks based on his suspicion. The officer sought

4

confirmation that Joecks did not have a valid driver's license and stopped Joecks only after obtaining confirmation.

Joecks contends that the officer did not have sufficient information to search the driver's-license database to confirm his belief that Joecks did not have a valid driver's license. Joecks's argument is unclear, but it appears that he is arguing that the search violated his rights under the Fourth Amendment by infringing on a protected privacy interest without either probable cause or reasonable suspicion.

The constitutional protections against unreasonable searches and seizures are not triggered unless a person has a legitimate expectation of privacy. *State v. Gail*, 713 N.W.2d 851, 860 (Minn. 2006). A person has a legitimate expectation of privacy when he has "an actual subjective expectation of privacy" that "society is prepared to recognize as reasonable." *Id.* (quotations omitted). Joecks did not present evidence that showed that he had a subjective expectation of privacy with respect to the driver's-license database. And even if we assume that he had a subjective expectation of privacy in the database maintained by the state, his expectation is not one that society is prepared to recognize as reasonable. One of the purposes of the driver's-license database is to inform law-enforcement agencies about drivers whose license or driving privileges have been revoked.[1] Given this purpose, which requires that law-enforcement agencies have access

---

[1] Pursuant to Minn. Stat. § 171.12, subds. 1, 9 (2014), the department of public safety "shall maintain suitable indices containing, in alphabetical order: . . . "the name of every person whose license has been suspended, revoked, or canceled" and the commissioner of public safety shall "furnish driving records, without charge, to chiefs of police, county sheriffs, prosecuting attorneys, and other law enforcement agencies with the power to arrest."

5

to the database, Joecks's expectation of privacy is not reasonable. Therefore, no constitutional protection against a search of the database was triggered.

The officer established a reasonable, articulable suspicion of criminal activity when he saw Joecks drive and confirmed that his license was revoked. This is sufficient to support a brief investigatory stop. *See* Minn. Stat. § 171.24 (2014) (defining crimes of driving without a valid driver's license); *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004) ("Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop."). The district court did not err by denying Joecks's motion to suppress.

**Affirmed.**