*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0674**

State of Minnesota,
Respondent,

vs.

Jayson Stanley Sam,
Appellant.

**Filed May 9, 2016
Affirmed
Johnson, Judge**

Mille Lacs County District Court
File No. 48-CR-13-1539

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Joe Walsh, Mille Lacs County Attorney, Timothy Kilgriff, Kali Gardner, Assistant County Attorneys, Milaca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Jayson Stanley Sam was convicted of being an ineligible person in possession of a firearm. Before trial, he moved to suppress evidence of the firearm. The district court

denied the motion. We conclude that the police officer who found the firearm had a reasonable, articulable suspicion of criminal activity before seizing Sam. Therefore, we affirm.

## FACTS

On August 2, 2013, Mille Lacs Tribal Police Department Officer Adam Cook was on patrol in a "high crime area" near the Grand Casino in the city of Onamia. As he was driving, Officer Cook saw four men walking along the side of a road. Officer Cook recognized three of the four men, including a man who was affiliated with a gang and was a suspect in a recent, violent incident involving firearms.

Officer Cook followed the men in his squad car. As he did so, he noticed that one of the men, whom he recognized as Sam, was holding on to the side of his right leg and was walking with a limp. Officer Cook later testified that, based on his training and experience, he knew that people sometimes walk that way when trying to conceal a weapon. Officer Cook also noticed that Sam appeared to be wearing a bulletproof vest under his shirt of a type similar to the bulletproof vests that are worn by his fellow officers. In addition, Officer Cook had learned, before going on patrol, that a bulletproof vest had been stolen from the Grand Casino. The four men were walking immediately across the road from the Grand Casino.

Officer Cook got out of his squad car and told the men to stop. Two of the men stopped walking; two of the men, including Sam, continued to walk away. Officer Cook began walking toward Sam and again told him and the other man to stop. Sam stopped, turned around, and walked back toward the other men. Officer Cook asked Sam whether

2

he could search him because Officer Cook believed that Sam possessed a weapon alongside his right leg, which made the officer concerned for his own safety. Sam did not consent to a search. Officer Cook advised Sam that he was going to search him anyway. Officer Cook conducted a pat search of the outside of Sam's right leg and immediately felt an object that he suspected was a firearm. He asked Sam what the object was; Sam confirmed that the object was a gun. Officer Cook arrested Sam and placed him in handcuffs. The other men fled the scene. Officer Cook later lifted Sam's shirt to reveal the top of the object and saw that Sam was carrying a sawed-off shotgun.

Three days later, the state charged Sam with being an ineligible person in possession of a firearm, in violation of Minn. Stat. § 624.713, subd. 1(2) (2012), and commission of a crime while wearing or possessing a bullet-resistant vest, in violation of Minn. Stat. § 609.486 (2012). The state later amended the complaint to add a third charge: possession of a short-barreled shotgun, in violation of Minn. Stat. § 609.67, subd. 2 (2012).

In September 2013, Sam moved to suppress the evidence that Officer Cook found after he seized Sam (*i.e.*, the sawed-off shotgun and the bulletproof vest). At an omnibus hearing in December 2013, the state called Officer Cook to testify. Neither party called any other witnesses. In a ten-page order, the district court denied Sam's motion to suppress. The district court concluded that Officer Cook seized Sam for an investigatory detention when he told Sam to stop walking and that the seizure was supported by a reasonable, articulable suspicion of criminal activity.

In August 2014, the parties submitted the case to the district court in a stipulated-evidence court trial. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court found Sam

guilty of all three charges. The district court sentenced Sam to 60 months of imprisonment on count 1. Sam appeals.

## DECISION

Sam argues that the district court erred by denying his motion to suppress evidence on the ground that Officer Cook did not have a reasonable, articulable suspicion of criminal activity when he told Sam to stop walking.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. As a general rule, a law-enforcement officer may not make a warrantless arrest of a person without probable cause that the person "had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964). But a law-enforcement officer may temporarily detain a person for investigatory purposes if the officer has a reasonable, articulable suspicion that the person has engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 19-21, 88 S. Ct. 1868, 1878-80 (1968); *State v. Diede*, 795 N.W.2d 836, 842-43 (Minn. 2011). A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-suspicion standard is not high, but the suspicion required must be based on more than a mere "hunch." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotations omitted). Police must "articulate a 'particularized and objective basis for suspecting the particular person stopped of criminal

activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695 (1981)). If the facts are not in dispute, we apply a *de novo* standard of review to the question whether a police officer had a reasonable, articulable suspicion of criminal activity. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

In this case, the parties agree that Officer Cook seized Sam for investigatory purposes when Officer Cook got out of his squad car and told Sam to stop walking away. *See In re E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993). The parties disagree about whether the seizure was supported by a reasonable, articulable suspicion of criminal activity. Sam contends that there was no reasonable suspicion because it is not unlawful to walk with a limp or to wear a bulletproof vest. Sam is correct that each of those activities, by itself, is not unlawful. However, "In deciding the propriety of investigative stops, we review *the events surrounding the stop* and consider *the totality of the circumstances* in determining whether the police had a reasonable basis justifying the stop." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000) (emphases added).

In this case, there were other events and circumstances that contributed to Officer Cook's suspicion of Sam and the three other men: (1) Officer Cook was on patrol in a "high crime area"; (2) Officer Cook saw Sam walking with a person who was known to be affiliated with a gang; (3) Officer Cook observed Sam wearing a bulletproof vest; (4) Officer Cook knew that a bulletproof vest had been stolen from the Grand Casino, which was just across the road, earlier that day; and (5) Officer Cook knew from training and experience that a person might walk with a limp if he or she is concealing a firearm.

Although walking with a limp and wearing a bulletproof vest may be innocuous in other circumstances, they were a reason for suspicion in these circumstances. When Officer Cook saw Sam walking with a limp while in the company of a person with a known gang affiliation, he suspected that Sam might be concealing a firearm. And when Officer Cook saw Sam wearing a bulletproof vest across the street from Grand Casino, where a bulletproof vest recently had been stolen, he had even more reason to be suspicious. "We are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye." *Id.* at 88-89. Considering all of the circumstances, and deferring to Officer Cook's training and experience, we conclude that Officer Cook had a reasonable, articulable suspicion of criminal activity when he pulled his squad car to the side of the road and told Sam to stop walking.

In sum, the district court did not err by denying Sam's motion to suppress evidence.

**Affirmed.**