*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1466**

State of Minnesota,
Respondent,

vs.

Noel Cortez,
Appellant.

**Filed October 6, 2025**
**Reversed**
**Bond, Judge**

Cass County District Court
File No. 11-CR-23-439

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Benjamin T. Lindstrom, Cass County Attorney, Karl Zinkl, Assistant County Attorney, Walker, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Christopher T. Ruska, Special Assistant Public Defender, Nilan Johnson Lewis PA, Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Larkin, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**BOND**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence.

Appellant, the back-seat passenger in a car that a sheriff's deputy stopped for speeding,

argues that the deputy expanded the scope of the traffic stop without reasonable, articulable suspicion of criminal activity by asking the car's occupants about marijuana use and by removing appellant from the car. Appellant further argues that, after the deputy removed him from the car, the deputy conducted a pat-frisk for weapons without a reasonable belief that appellant was armed and dangerous. We conclude that the officer lacked reasonable, articulable suspicion of criminal activity to justify expanding the traffic stop into a drug investigation by asking about marijuana use. We therefore reverse.[1]

### FACTS

Respondent State of Minnesota charged appellant Noel Cortez with second-degree controlled-substance possession in violation of Minn. Stat. § 152.022, subd. 2(a)(4) (2022). The charge stemmed from evidence found on Cortez after police stopped a vehicle, in which Cortez was a passenger, for a speeding violation. Cortez moved to suppress the evidence, arguing, in part, that law enforcement impermissibly expanded the traffic stop to investigate drug activity without reasonable, articulable suspicion. At the contested omnibus hearing, the state called the deputy who conducted the traffic stop and introduced footage from the deputy's body-worn camera. The following uncontested facts were established at the hearing.

Just after 3:00 p.m. on March 28, 2023, a Cass County Sheriff's Deputy on routine patrol observed a car traveling at 73 or 74 miles per hour in a 60-mile-per-hour zone. The

---

[1] Because we conclude that the deputy impermissibly expanded the scope of the stop by asking about marijuana use without reasonable, articulable suspicion of criminal activity, we need not address Cortez's challenges to the constitutionality of his removal from the car or the pat-frisk for weapons.

deputy activated his vehicle's emergency lights and stopped the car for speeding. The deputy approached the front passenger window, which was partially rolled down. In addition to the driver, there was a female passenger in the front seat. Cortez was in the back seat.

The deputy asked the driver for her driver's license and proof of insurance, both of which the driver provided. The deputy asked the driver and front passenger where they were headed and where they came from. The driver and front passenger replied that they had picked up the front passenger in Minneapolis and were now on their way back to Bemidji. In response to additional questioning, the driver told the deputy that she had left Bemidji at about 8:00 p.m. the previous evening and that the front-seat passenger was Cortez's cousin.

The deputy went back to his squad car with the driver's information. After several minutes, the deputy returned to the car's front passenger window and handed the driver's license back to the driver.

The deputy then asked when the last time anyone in the car had smoked marijuana. Cortez told the deputy that he had smoked marijuana the previous night. The deputy asked Cortez, "Nothing today though?" Cortez replied, "No." The deputy directed Cortez to step out of the car. When Cortez exited the car, he put both hands in the front pockets of his pants. The deputy asked Cortez to remove his hands from his pockets, which Cortez did. The deputy then pat-frisked Cortez. During the pat-frisk, the deputy felt a hard, round object in Cortez's pants that was later determined to be 194 grams of fentanyl.

In his testimony at the contested omnibus hearing, the deputy identified two reasons for expanding the traffic stop into a drug investigation by asking about marijuana use. First, the deputy, a licensed peace officer for about eight years who had training and experience in narcotics investigations, testified that he had detected an odor of marijuana coming from within the vehicle when he first approached the front passenger window. Second, the deputy explained the car's "short turnaround trip to the metro area" drew his attention to narcotics because "[a] lot of narcotics that come up to [the Cass County] area come from the metro and through [his] experience in other cases that short turnaround traffic is very indicative of someone who's going down to . . . pick up narcotics to bring back to this area." The deputy acknowledged that certain marijuana products were legal in Minnesota at the time of the stop and that his observation about a potential drug run to the metro area was not documented in his police report.

The district court denied Cortez's motion to suppress, determining that the deputy had reasonable suspicion to expand the traffic stop into a drug investigation based on the odor of marijuana and vehicle's short turnaround trip to the metro area. The district court also determined that the pat-frisk was justified by the deputy's reasonable belief that Cortez was "trafficking illegal drugs" and because Cortez putting his hands into his pockets made the deputy reasonably concerned that Cortez was armed and dangerous.

Cortez waived his jury-trial rights and stipulated to the prosecution's case under Minn. R. Crim. P. 26.01, subd. 4, preserving his right to appeal the district court's dispositive suppression ruling. The district court found Cortez guilty and imposed a stayed sentence of 69 months in prison, placing Cortez on probation for 5 years.

4

Cortez appeals.

**DECISION**

Cortez challenges the district court's denial of his motion to suppress evidence. In considering a challenge to a district court's pretrial ruling on a motion to suppress evidence, appellate courts review factual findings for clear error and legal determinations de novo. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011). If the facts are not in dispute, appellate courts review whether an officer had reasonable, articulable suspicion de novo. *State v. Lugo*, 887 N.W.2d 746, 487 (Minn. 2016)

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches and seizures are unreasonable under both the federal and state constitutions unless a recognized warrant exception applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). Evidence obtained in violation of the federal or state constitution must be suppressed. *Diede*, 795 N.W.2d at 842; *see also State v. Babineau*, 23 N.W.3d 396, 410 (Minn. App. 2025) ("Generally, evidence obtained through an unlawful expansion of the scope of a vehicle stop must be suppressed.").

One exception to the warrant requirement allows a police officer to "conduct a brief, investigatory stop of a motor vehicle when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Taylor*, 965 N.W.2d 747, 752 (Minn. 2021) (quotation omitted). "Reasonable suspicion must be 'particularized' and based on 'specific and articulable facts which, taken together with rational inferences from those

5

facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The reasonable suspicion standard is "not high," but it requires more than an unarticulated "hunch." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotations omitted). In determining whether reasonable suspicion exists, courts "consider the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001).

An initially valid stop may become invalid if it becomes "intolerable" in its "intensity or scope." *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004) (quoting *Terry*, 392 U.S. at 17-18). Accordingly, under the Minnesota Constitution, "each incremental intrusion during a traffic stop [must be] tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry*." *Id.* at 365; *see also State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012) (stating that an expansion of the scope of a stop "not strictly tied to the circumstances that rendered the initiation of the stop permissible must be supported by at least a reasonable suspicion of additional illegal activity"). The state bears the burden to demonstrate that an investigatory stop was "sufficiently limited" in scope and duration. *Babineau*, 23 N.W.3d at 405.

The deputy stopped the car that Cortez was a passenger in because the deputy observed that the car was speeding. Cortez does not dispute that, under these circumstances, the traffic stop was justified at its inception. *See State v. George*, 557 N.W.2d 575, 578 (Minn. 1997) ("Ordinarily, if an officer observes a violation of a traffic

6

law, however insignificant, the officer has an objective basis for stopping the vehicle."). Rather, he argues that the deputy unlawfully expanded the scope of the traffic stop by asking the vehicle's occupants about marijuana use without reasonable, articulable suspicion of criminal activity.

## I.    The deputy expanded the scope of the traffic stop by asking about marijuana use.

During a traffic stop, an officer's questioning generally "must be limited to the purpose of the stop." *State v. Syhavong*, 661 N.W.2d 278, 281 (Minn. App. 2003). "[E]ven a single question, depending on its content, could expand the scope of a traffic stop." *Smith*, 814 N.W.2d at 351 n.1. Cortez argues that the deputy's question about marijuana use expanded the scope of the stop because the question was not tied to the speeding violation, which was the initial reason for the stop. The state asserts that "[i]t is highly unlikely that [the deputy's] single question unlawfully expanded the stop in any meaningful way." We agree with Cortez.

After the parties' briefs were filed in this case, this court issued its opinion in *Babineau*. In *Babineau*, officers conducted an equipment-violation traffic stop of the defendant's car. 23 N.W.3d at 402. When the officers returned to their squad car after the initial stop, one officer informed the second officer that he may have smelled marijuana in the car. *Id.* at 403. The second officer reapproached the car and questioned the defendant about the odor of marijuana. *Id.* We concluded that, because the original purpose of the stop was an equipment violation, the officer's "decision to reapproach the vehicle to

7

investigate the odor of marijuana constituted an expansion of the scope of the stop requiring reasonable suspicion of additional criminal activity." *Id.* at 406.

In this case, Cortez was a passenger in a car that was stopped for a routine traffic violation. The deputy approached the car, inquired about the speeding violation, returned to his squad car with the driver's license, and then reapproached the car and returned the license to the driver. At that point, the original justification for the stop—the speeding offense—had ended. The deputy then questioned the car's occupants about marijuana use. As in *Babineau*, the deputy's questions about marijuana were unrelated to the original purpose of the stop and, consequently, constituted an expansion of the scope of the traffic stop requiring reasonable suspicion of additional criminal activity. *Id.*; *see also State v. Fort*, 660 N.W.2d 415, 419 (Minn. 2003) (concluding that "investigative questioning" related to the presence of weapons and narcotics expanded the scope of a routine traffic stop); *Syhavong*, 661 N.W.2d at 281 (concluding that officer expanded the scope of an equipment-violation stop by asking the driver if there was anything illegal in the car).

## II. The deputy lacked reasonable, articulable suspicion of criminal activity to expand the scope of the traffic stop.

Having determined that the deputy expanded the scope of the traffic stop by questioning the car's occupants about marijuana use, we next consider whether there was reasonable suspicion of criminal activity justifying the expansion. *Smith*, 814 N.W.2d at 350; *Askerooth*, 681 N.W.2d at 364. In his testimony, the deputy identified two factors that caused him to suspect illegal drug-related activity: the odor of marijuana within the car and the car's "short turnaround trip to the metro area." We first consider these facts

8

independently and then we consider whether, in the aggregate, they amount to reasonable suspicion. *See State v. Garding*, 12 N.W.3d 697, 702-03 (Minn. 2024) (stating that, "[w]here appropriate, the totality of the circumstances may be analyzed by looking first to each identified fact supporting reasonable suspicion independently and then considering whether those facts, even if independently weak, are sufficient in the aggregate"); *State v. Burbach*, 706 N.W.2d 484, 489-91 (Minn. 2005) (concluding that police did not have reasonable suspicion of drug possession justifying a search of appellant's vehicle and stating that "[e]ach of these factors is weak evidence of drug possession, and they are also weak in the aggregate").

In *Babineau*, we held that "the odor of marijuana emanating from a vehicle does not, on its own, provide reasonable, articulable suspicion of criminal activity sufficient to expand the scope of an equipment-violation vehicle stop" if the stop occurred before Minnesota's marijuana laws changed on August 1, 2023. 23 N.W.3d at 408. As in *Babineau*, under cannabis laws in effect at the time the deputy conducted the traffic stop in this case, possession of marijuana was "not always a crime." *Id.* at 407 (quoting *State v. Torgerson*, 995 N.W.2d 164, 170 (Minn. 2023)).[2] While the odor of marijuana

---

[2] At the time of the traffic stop, marijuana was listed as a Schedule I controlled substance. Minn. Stat. § 152.02, subd. 2(h) (2022). Marijuana was defined as "all parts of the plant of any species of the genus Cannabis." Minn. Stat. § 152.01, subd. 9 (2022). Under this statutory scheme, "Minnesota law provided three exceptions that made cannabis possession noncriminal." *Babineau*, 23 N.W.3d at 406 (citing *Torgerson*, 995 N.W.2d at 169-70). The legislature amended Minnesota's cannabis laws effective August 1, 2023. 2023 Minn. Laws ch. 63, art. 4, § 30, at 145. Consequently, "[t]he statutory scheme in place today is quite different." *Babineau*, 23 N.W.3d at 414 (Connolly, J., concurring

9

emanating from the car in which Cortez was a passenger "may be considered as a relevant factor among the totality of the circumstances, it does not, on its own, amount to reasonable suspicion of criminal activity." *Id.*; *see also Burbach*, 706 N.W.2d at 489 (concluding that the "odor of alcohol coming from an adult passenger during a traffic stop does not, by itself, provide a reasonable, articulable suspicion of an open-container violation sufficient to permit an officer to expand the traffic stop by requesting to search the vehicle").[3]

The deputy's second basis for suspecting criminal drug activity was the car's "short turnaround trip to the metro area," which "stood out" to the deputy because "[a] lot of narcotics that come up to [that] area are from the metro." We are mindful that reasonable suspicion must be evaluated from the perspective of a trained police officer, whose inferences may "elude an untrained person." *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014) (quotation omitted). But the officer must nonetheless identify a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Timberlake*, 744 N.W.2d at 393 (quotation omitted). On this record, we are unpersuaded

---

specially) (explaining ways in which use and possession of marijuana in a motor vehicle is a crime under Minn. Stat. § 169A.36, subds. 2, 3 (2024)).

[3] Cortez argues that *Babineau* is dispositive to the reasonable-suspicion question because the only basis for the deputy's question was his detection of the odor of marijuana. But in *Babineau*, the officer's "detection of the odor of marijuana was equivocal" and the officer "did not provide reasonable, articulable suspicion of additional criminal activity." 23 N.W.3d at 408-09. Here, in contrast, the deputy did not equivocate that he detected the smell of marijuana and the deputy identified the car's recent travel to the metro area as a second basis for his suspicion.

that the car's recent travel to the metro area amounted to anything more than a "hunch." *See Diede*, 795 N.W.2d at 843.

The deputy's testimony and the body-worn camera evidence establish that the driver and the front passenger told the deputy that the reason they drove to Minneapolis the previous evening was to pick up the front-seat passenger. The deputy did not testify, and the district court did not find, that this explanation appeared untruthful or lacked credibility. Indeed, it is not unusual for Minnesotans to travel to the metro area. *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (concluding that a person's standing in an alleyway in a neighborhood frequented by drug users did not provide reasonable suspicion of criminal activity because "[t]here is no indication in the record that it was unusual for people to be in the alley" and the person's "activity was no different from the activity of other pedestrians in that neighborhood"). Further, caselaw instructs that merely being in, or traveling to, a place that may be associated with drug activity does not, on its own, amount to reasonable suspicion. *See State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (stating that "merely being in a high-crime area will not justify a stop"), *aff'd, Minnesota v. Dickerson*, 508 U.S. 366 (1993); *Fort*, 660 N.W.2d at 419 (explaining that mere presence in a "high drug" area does not constitute reasonable suspicion); *State v. Rodriguez*, No. A22-1029, 2023 WL 3161880, at *4 (Minn. App. May 1, 2023) (concluding that "[m]erely coming from a 'source country' or 'source state' is not sufficient, standing alone,

11

to support an officer's reasonable suspicion" of drug-related criminal activity to expand a traffic stop).[4]

To be sure, even when "each individual factor is consistent with innocent travel, all of the factors together may amount to reasonable suspicion." *State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998). But when we have concluded in other cases that reasonable suspicion existed based in part on a car's recent travel from an alleged source location for illegal drugs, multiple additional factors have generally been present. *See State v. Nieto*, No. A21-0209, 2021 WL 5872870, at *2-3 (Minn. App. Dec. 13, 2021) (stating reasonable suspicion established by car coming from Las Vegas, "a known drug trafficking hub," suspicious driving activity, driver's nervous behavior, overwhelming smell of air freshener, driver's vague and conflicting explanations about his travel itinerary, abnormal lack of luggage for a cross-county trip, and discrepancies in the vehicle's registration); *State v. Gonzalez-Perez*, No. A19-0885, 2020 WL 4743473, at *1-2 (Minn. App. Aug. 17, 2020) (stating reasonable suspicions established by, among other factors, car being parked in isolated spot in hotel parking lot, presence of multiple air fresheners, suspicious driving behavior, car had Texas license plates which was "a known drug source state," driver could not produce the names of friends he was coming to visit, and had "driven virtually straight through from Texas"). No such additional, particularized facts exist in this case linking the car's travel to the metro area to illegal drug trafficking.

---

[4] We cite nonprecedential opinions for their persuasive authority. *See* Minn. R. Civ. App. P. 136.01(c).

Finally, we consider whether the two factors identified by the deputy, in the aggregate, constitute reasonable suspicion of criminal activity. This is a close case. But reasonable suspicion, while not a high standard, demands that police "be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Martinson*, 581 N.W.2d at 850 (quotations omitted). Our de novo review and our binding precedent in *Babineau* lead us to conclude that, particularly given the cannabis laws in effect at the time of the stop, the state has not met its burden to establish that the deputy had "a particularized and objective basis for suspecting criminal activity" sufficient to expand the traffic stop into an investigation of illegal drug-related activity. *See Garding*, 12 N.W.3d at 702 (quotation omitted).

For the reasons we have explained, the two individual factors are relatively weak. And the deputy did not point to any other facts contributing to the existence of reasonable, articulable suspicion of criminal activity. For example, the deputy did not testify that any of the car's occupants appeared to be under the influence of drugs or exhibited signs of past drug use. *Id.* at 704-05 (concluding that, viewed in the aggregate, passenger's signs of recent drug use, officer's observation of shopping bag containing objects that appeared similar to "rocky" methamphetamine, and driver's flight established reasonable suspicion to conduct dog-sniff of car's exterior). The deputy did not observe drug paraphernalia, drug packaging, or any other suspicious objects in the car. *See id.* Nor did the car's occupants make any furtive or suspicious movements. *State v. Flowers*, 734 N.W.2d 239, 243, 252 (Minn. 2007) (concluding that driver's actions including lunging toward the passenger door, leaning fully into the passenger's seat, and slamming his hand on the

13

driver's door panel as if he was trying to pull it apart constituted furtive movements supporting a reasonable suspicion of illegal activity). Therefore, under the totality of the circumstances, the deputy lacked reasonable, articulable suspicion of drug-related criminal activity sufficient to expand the scope of the traffic stop. *Fort*, 660 N.W.2d at 416-18 (concluding that car's presence in "high drug" area of Minneapolis and officer's observation that passenger was "nervous and avoided eye contact" did not establish reasonable suspicion to expand traffic stop to ask about drugs or weapons); *Burbach*, 706 N.W.2d at 491 (concluding that suspicion of drug possession "supported only by a driver's nervous behavior, an unsubstantiated tip of unknown origin, and speeding" and "the driver does not exhibit other signs of impairment" was insufficient for reasonable, articulable suspicion).

Accordingly, the district court erred in denying Cortez's motion to suppress the evidence. Because the parties agreed that the ruling on the suppression motion was dispositive under Minn. R. Crim. P. 26.01, subd. 4, we reverse Cortez's conviction.

**Reversed.**

14